IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>TANG MIAN, and )<br>HE JIE, )<br>)<br>Defendants. ) | CASE NUMBER: 24-MJ-4090-RJD |

## CRIMINAL COMPLAINT

I, KORY L. KUBA, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### COUNT 1

### WIRE FRAUD (18 U.S.C. § 1343)

On or about October 24, 2024, in Williamson County, Illinois, within the Southern District of Illinois,

**TANG MIAN,** and
**HE JIE,**

defendants herein, knowingly devised and participated in a scheme to defraud T.S. and M.S., and to obtain money and property belonging to T.S. and M.S. by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme to defraud described above, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate or foreign commerce, from somewhere outside the state of Illinois, to Illinois, certain signals, namely a telephone conversation by a conspirator who identified himself as "David" and T.S.

## AFFIDAVIT

I further state as follows:

1. I am a Postal Inspector with the United States Postal Inspection Service (USPIS), and I have 19 years' experience as a federal law enforcement officer. I am a graduate of the Federal Law Enforcement Training Center where I received classroom and practical training in criminal investigations. I am vested with the authority to investigate violations of federal criminal laws as an investigative or law enforcement officer of the United States, within the meaning of Title 18, United States Code, § 2510(7). I have conducted and assisted with numerous criminal investigations concerning violations of federal and state laws. My current assignment is with the Financial Crimes Team where I investigate mail theft, mail fraud, and other financial crimes.

2. Detective Chris Fozzard of the City of Marion, Illinois, Police Department has informed me about a matter he is investigating in which members of a fraud conspiracy have defrauded T.S. and M.S., elderly residents of Marion. The statements contained in this affidavit are based upon statements made to me by Detective Fozzard regarding his investigation of this matter.

3. On October 18, 2024, the City of Marion Police Department was notified that T.S. and M.S. were being defrauded. Detective Fozzard was assigned to investigate this matter.

4. Later that same day, Detective Fozzard interviewed T.S. and M.S. They stated on October 8, 2024, T.S. received an email that was purportedly from PayPal. The email indicated that a purchase had been made in T.S.'s name in the amount of $479.99 for an item called McAfee

Plus. The email also stated that if T.S. had not made this purchase, he should call the following number: 951-267-9872.

5. An internet search shows that the 951 area code is in the state of California. However, I am aware that fraudsters often "spoof" telephone numbers to make it look like their calls are coming from another location. I also know that the particular fraud scheme described in this affidavit is typically conducted by individuals located outside of the United States.

6. T.S. called 951-267-9872 and informed the individual who answered the call that he had not made the purchase of McAfee Plus. The individual on the call requested T.S.'s personal information, including full name and address. T.S. provided the requested information. The individual then told T.S. that the purchase would be cancelled.

7. Within a few hours of this call, T.S. received another phone call. This call was from telephone number 707-706-0403. The 707 area code is also in California. The caller identified himself as "David" and indicated that he was an employee of the Federal Trade Commission ("FTC"). "David" stated that T.S.'s social security number had recently appeared in connection with approximately 81 transactions that appeared to be fraudulent. As a result of this, according to "David", the FTC was currently investigating T.S.

8. "David" also told T.S. that he was in danger of having all of his funds stolen. In order to keep his funds safe, "David" told T.S. that he would have to take all of his savings, retirement and other funds out of the accounts where they were currently held and transfer those funds into a safe federal locker.

9. Pursuant to "David's" instruction, T.S. sent screenshots of the balances of his retirement, savings, and other accounts. The balances of these accounts were: (1) $2,452,033.68; (2) $301,604.47; (3) $127,904.15; and (4) $13,944.29.

10. "David" later gave T.S. instructions regarding how to make an initial withdrawal for transfer to the safe federal locker. Detective Fozzard couldn't remember the exact amount of T.S.'s first withdrawal, but thought it was around $58,000. "David" told T.S. to go to his financial institution to make the withdrawal. "David" further instructed T.S. to leave his phone on and to maintain an open line with him while T.S. was at his financial institution, so that "David" could hear what was happening. After the withdrawal was made, T.S. was instructed to send photos of the cash and the withdrawal receipt to "David." "David" further instructed T.S. to place the funds in a box and to wrap the box with clear tape. "David" said an agent would be sent to T.S.'s house in Marion to pick up the funds. "David" gave T.S. a code word(s) that he was to use with the agent to verify the agent's identity.

11. T.S. followed "David's" instructions. On October 9, 2024, a male of Asian descent appeared at T.S.'s residence in Marion, Illinois. The male appeared to be in his late teens or early twenties. The male stood in the road outside T.S.'s home and T.S. went out into the road and met him. T.S. exchanged the code word(s) with the young Asian male and then handed him the box containing T.S.'s funds.

12. "David" subsequently contacted T.S. again and instructed him to make another cash withdrawal. "David" directed T.S. to use the same procedures for withdrawing the funds and handing the funds over to the agent. T.S. followed "David's" instructions.

13. On October 10, 2024, at approximately 3:45 p.m., another young Asian male appeared outside T.S.'s residence in Marion. Following the same procedures as before, T.S. handed the second young Asian male a box containing $42,000 in cash.

14. "David" subsequently contacted T.S. again and instructed him to make a third withdrawal. T.S. followed the same instructions and withdrew $29,000 in cash. On October 15, 2024, the second Asian male, the same one who had appeared at T.S.'s residence on October 10th, again appeared outside T.S.'s residence in Marion. Following the same procedures as before, T.S. handed the second Asian male a box containing the $29,000 in cash.

15. During the midst of these transactions, "David" had instructed T.S. not to leave his house. "David" had further instructed T.S. that if he did have to leave his house, he was to text "David" to let him know. "David" warned that T.S. was being followed everywhere he went.

16. While Detective Fozzard was with T.S. and M.S. on Friday, October 18, 2024, "David" called T.S. again. T.S. did not answer the phone. At Detective Fozzard's instruction, M.S. called "David" back and told him that T.S. was in the hospital.

17. "David" continued to call over the weekend (October 19th and 20th). "David" asked for verification that T.S. was in the hospital. Detective Fozzard later created some phony hospital papers for T.S. On Tuesday, October 22, 2024, T.S. sent those papers to "David."

18. "David" instructed T.S. and M.S. to make another withdrawal in the amount $50,000. On October 24, 2024, Detective Fozzard went with T.S. to First Southern Bank in Marion, Illinois. Bank representatives provided Detective Fozzard with $50,000 in cash as prop money. Bank representatives also provided a receipt showing a $50,000 cash withdrawal from T.S.'s bank account. This transaction was voided after a photograph was taken of the receipt.

T.S. sent a photograph of the cash and receipt to "David". Then, at Detective Fozzard's instruction, an empty box was sealed and wrapped in the same manner as the three prior boxes that were handed to the Asian males.

19. About one hour later, "David" called T.S. and told him someone would be there to pick up the $50,000 at approximately 4:30 p.m. that afternoon. The Marion Police Department subsequently set up a surveillance at T.S. and M.S.'s residence, both inside their home and on the streets outside their home.

20. At approximately 3:30 p.m. that afternoon, a silver Prius pulled up on the street near T.S. and M.S.'s home. The driver of the vehicle, later identified at Tang Mian, got out of the vehicle and began pacing in front of the T.S. and M.S.'s residence. The passenger of the vehicle, later identified as He Jie, got out of the passenger seat and sat down in the driver's seat.

21. T.S. spoke with "David" via telephone while Tang Mian was standing outside his residence. When T.S. informed "David" that the agent was outside his residence, "David" told T.S. to go outside, exchange the code words with the agent, and hand him the box. T.S. did this. After Tang Mian received the box, and began walking back toward the silver Prius, the Marion police officers took both Tang Mian and He Jie into custody.

22. The officers asked both Tang Mian and He Jie for identifying information. He Jie claimed to speak no English. Through Google app translator, He Jie told the officers that he was a driver for DoorDash and that he was living in the car. Tang Mian speaks limited English. He also told the officers that he was living in the car. Because both Tan Mian and He Jie requested attorneys, no further interviews were conducted.

23. During a search of the silver Prius, officers located items of clothing, food, bedding items, and food wrappers. Based on these findings, it appeared to the officers that Tang Mian and He Jie were living in the vehicle.

24. The officers also located a significant amount of cash during their search of the vehicle. Located in the center console, the officers located $2,500 in cash. The cash was in $100 bills. There was a bank band around $2,000 of the cash. The remaining $500 was loose. Another $16,000 in cash was found on the floorboard under the passenger seat. This $16,000 was in bank bands. Detective Fozzard researched the name of one of the banks seen on the bank bands. He noted that this bank has branches located in Indiana and Kentucky, but none in Illinois.

25. The officers also located and seized four cell phones. One of the phones was in Tang's possession when he was arrested. Tang was seen talking on this phone while he was pacing outside of T.S. and M.S.'s residence. Two of the phones were on chargers in the car. One was open to a Map screen. The fourth phone was found in a pocket of a jacket found in the car.

26. Identification documents were seized from the person of Tang Mian. Tang Mian had both a New York state learner's permit and New York driver's license. Both of these items had issue dates of 2024. Both indicated that Tang Mian's address was 5023 8th Avenue, #403, Brooklyn, New York. Both indicated that Tang Mian's year of birth was 1995. Tang Mian also had an "Employment Authorization" card purportedly issued by the United States. This card indicates that the individual's surname is Tang and his given name is Mian. This card also indicates that Tang Mian was born in China. He also had a social security card containing the words: "Valid for work only with DHS authorization."

27.     Identification documents were also seized from the person of He Jie.  He Jie had a New York state learner's permit which indicated that his address was 5023 8th Avenue, #403, Brooklyn, New York, at the same address as Tang Mian.  According to this card, He Jie's year of birth is 1991.  He Jie also had an "Employment Authorization" card purportedly issued by the United States.  This card lists the surname as He and the given name as Jie.  This card also indicates that He Jie was born in China.  He Jie also had a social security card containing the words: "Valid for work only with DHS authorization."

28.     Based upon photographs taken at the time of the first three cash pickups, I do not believe that Tang Mian and He Jie were the individuals who made those first three cash pickups from T.S.

29.     The silver Prius had a California license plate of 6YBE968.  The car is titled in the name of Tang Mian.  According to the information on the registration, Tang Mian's address is 103 N. Lincoln Avenue, Apartment 28, Monterrey Park, CA.

30.     Detective Fozzard obtained License Plate Reader ("LPR") information for the silver Prius.  This LPR information showed that, within the past 30 days, the silver Prius has been in the states of Illinois, Missouri, Indiana, Kentucky, and Ohio.

FURTHER AFFIANT SAYETH NAUGHT.

*Kory L. Kuba*
KORY L. KUBA
Postal Inspector
United States Postal Inspection Service


*Scott A. Verseman*
SCOTT A. VERSEMAN
Assistant United States Attorney

State of Illinois        )
                         )   SS.
County of Jackson        )

      Sworn to before me and subscribed in my presence on the 25th day of October, 2024, at Carbondale, Illinois.

_____
REONA J. DALY
United States Magistrate Judge